1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEANNIE . MANN, | ) | 1:10cv0743 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Jeannie L. Mann ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on March 16, 2007, alleging disability since June 26, 2005, due to chronic muscle pain in her upper and lower back, arthritis and degenerative disc disease. AR 125-127, 140-147. After her application was denied initially and on reconsideration,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 55-62, 63-68, 82.

2   ALJ Michael Haubner held a hearing on September 2, 2008, and issued a decision denying

3   benefits on December 5, 2008.  AR 13-21, 22-54.  The Appeals Council denied review on

4   February 19, 2010.  AR 1-4.

5   <u>Hearing Testimony</u>

6       ALJ Haubner held a hearing on September 2, 2008, in Fresno, California.  Plaintiff

7   appeared with her attorney, Charles Orn.  Vocational expert ("VE") Jose Chaparro also appeared

8   and testified.  AR 22.

9       Plaintiff testified that she was born in 1955 and received her GED.  She was trained to

10  drive a school bus in 1997.  AR 29.  Plaintiff stated that she last worked around June 26, 2005,

11  and that she has not looked for work since that time.  AR 30.

12      Plaintiff lives with her husband, who is not working and receiving workers'

13  compensation, and her son, 17, and daughter, 20.  AR 30.  Plaintiff is able to care for her

14  personal needs, prepare simple meals once a day and do dishes once a day.  She cooks twice a

15  week and goes grocery shopping once a week.  AR 31.  She tries to sweep, but it hurts too much.

16  Plaintiff does not take out the trash, vacuum, or mop.  She dusts once a week and does laundry

17  every day.  AR 32-33.  Plaintiff has ten cats and four dogs and does not take care of them.  AR

18  34.

19      Plaintiff cleans her kitchen every other day, and thought that she cleaned the bathrooms

20  once every six months.  She talks on the phone every day and visits people outside of her house

21  every day.  AR 35.  Plaintiff likes to crochet and knit and does it for about an hour, once a week.

22  AR 36.  She watches television for about two hours a day and reads about 20 minutes, twice a

23  week.  AR 36.

24      Plaintiff testified that in addition to multiple level degenerative joint disease in her

25  lumbar spine, facette arthropathy and lumbar radiculopathy, she has a problem with her right

26  neck, shoulder and arm.  AR 36-37.  She had surgery on her right arm in 1979 and now has

27  arthritis.  AR 37.

28

1    Plaintiff has constant pain in her back, her right leg and foot, her right arm and the right

2  side of her foot.  AR 41.  She rated her leg pain at a six out of ten, her back pain at a seven or

3  eight, her right arm pain at a fix or six, her right foot pain at a seven and her right-sided neck pain

4  at a seven.  To relieve the pain, her husband rubs her back, arm and shoulder and this sometimes

5  helps.  AR 41-42.  She also takes medication for pain and uses ice.  AR 42.  She testified that she

6  could only concentrate for 30 minutes because of the pain.  AR 42.

7    Plaintiff testified that she follows all treatment recommendations and takes all

8  medications.  AR 38.  She is 5 feet, 7 inches tall and weighs 245 pounds.  Doctors have told her

9  to lose weight and she watches what she eats to try and lose weight.  She also does stretching

10  exercises for 20 minutes a day.  AR 38.  Plaintiff indicated that she was about 70 percent

11  compliant with her weight loss diet, though she has lost weight.  AR 38-39.

12    Plaintiff estimated that she could carry about five pounds, stand for 20 minutes before

13  needing to sit, and sit for about 20 minutes before needing to stand.  Plaintiff could walk a few

14  blocks before needing to rest.  She also has trouble reaching, but combs her own hair and brushes

15  her teeth.  Plaintiff thought that she could reach over her right shoulder with her right arm

16  occasionally.  AR 39-40.  She lays down for one hour every day.  AR 40.

17    When questioned by her attorney, Plaintiff testified that she also gets headaches four

18  times a week, each lasting for about four hours.  AR 50-51.  Her husband rubs her neck and

19  shoulders and she takes Tylenol, which helps a little bit.  The pain in her shoulder goes into her

20  right hand and her little finger cramps if she tries to do too much with her hand.  AR 51-52.  For

21  example, if she peels peaches, the two middle fingers on her right hand go numb.  They also go

22  numb when she sleeps.  Plaintiff also had to stand up during the hearing because she was having

23  a hard time with her lower back.  AR 52.  The drive to the hearing was about 90 minutes and

24  Plaintiff had difficulty sitting for that long.  AR 53.

25    For the first hypothetical question, the ALJ asked the VE to assume a person of Plaintiff's

26  age, education and experience.  This person could lift 50 pounds occasionally, 25 pounds

27  frequently, and had no further limitations.  The VE testified that this person could perform both

28  of Plaintiff's past positions as a school bus driver, both as she performed it and as it is generally

performed, and landfill operator, as generally performed.  AR 45.  This person could also perform the world of unskilled medium, light and sedentary work.  AR 46.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk about six hours and sit for about six hours.  This person could occasionally climb ramps and stairs, ladders, ropes and scaffolds, occasionally crouch and crawl and frequently balance, stoop and kneel.  The VE testified that this person could not perform Plaintiff's past work but could perform a majority of sedentary and light unskilled work.  AR 46-47.  Using Plaintiff's transferable skills, this person could perform the light jobs of mobile lounge driver and three occupations within the chauffer driver title.  AR 47.

For the third hypothetical, the ALJ asked the VE to assume that this person could occasionally carry zero to ten pounds and would have "significant limitations" in repetitive reaching, handling, fingering and lifting.  This person should avoid temperature extremes, heights, pulling, pushing, stooping, kneeling and bending.  This person could perform a low stress job but would be absent more than three times per month.  The VE testified that this person could not perform Plaintiff's past relevant work or any other work in the national economy.  AR 47-48.

For the fourth hypothetical, the ALJ asked the VE to assume that this person could lift less than ten pounds, sit for 20 to 30 minutes, stand for 15 to 30 minutes and walk for 5 to 15 minutes.  This person could not perform bending or squatting and would be limited to four hours of work per day.  The VE testified that this person could not perform any work.  AR 48-49.

For the fifth hypothetical, the ALJ asked the VE to assume that this person could not lift, could sit for 15 to 30 minutes, stand for 15 to 30 minutes and walk for 15 to 30 minutes.  This person could not bend or squat and needs to change position frequently.  The VE testified that this person could not work.  AR 50.

For the sixth hypothetical, the ALJ asked the VE to assume that this person could lift and carry less than 10 pounds, stand and walk for less than two hours and sit for less than six hours with periodic alternation of sitting and standing.  AR 49.  This person has limited pushing and

4

pulling abilities in the lower extremities, can occasionally climb ladders, ropes, scaffolds, ramps and stairs and can occasionally balance.  This person could never kneel, crouch, crawl or stoop. This person could perform occasional reaching, frequent handling, constant fingering and constant feeling.  The VE testified that this person could not perform any work. AR 49-50.

For the final hypothetical, the ALJ asked the VE to assume that this person could lift and carry five pounds, stand for 20 minutes, sit for 20 minutes and walk two blocks.  This person could occasionally reach above shoulder level with the right dominant, upper extremity.  This person can concentrate in 30 minute increments and needs a one-hour unscheduled break per day. The VE testified that this person could not work.  AR 50.

Medical Record

An MRI of Plaintiff's lumbar spine performed on February 23, 2005, showed multilevel moderate degenerative disc disease associated with disc protrusion at L3-4, L4-5 and L5-S1. There was no disc herniation or significant bony spinal stenosis.  AR 197.

On July 2, 2005, Plaintiff saw Joerg Schuller, M.D., for lower back pain.  She also complained of intermittent right leg numbness.  Her pain had been increasing for the past three weeks, starting on June 6.  Plaintiff could not perform modified duty.  On examination, deep tendon reflexes were absent and straight leg raising was negative.  He prescribed Soma and Mobic and referred Plaintiff to physical therapy.  AR 254.

Plaintiff saw Dr. Schuller on July 20, 2005 and stated that she wanted to go back to work and that her pain had decreased.  Prolonged sitting/driving (for more than two hours) increased her pain.  Dr. Schuller released Plaintiff for modified work, with no lifting, sitting for no more than 15-30 minutes per hour, standing no more than 15-30 minutes per hour and ambulating for no more than 15-30 minutes per hour.  Plaintiff could not bend or squat and needed to change positions frequently.  AR 253.

On July 25, 2005, Plaintiff was seen for a physical therapy initial evaluation.  Her date of injury was listed as March 23, 2004, but Plaintiff stated that she first experienced pain on March 1, 2004.  She attempted physical therapy last year but could not continue because of intolerable pain.  Plaintiff reported that she could not stand for more than 15 minutes and could not walk for

more than 500 feet.  She was using pain medication.  Plaintiff entered the clinic in moderate

visible distress and her movement patterns and gait were slow and cautious.  She displayed a

limp, with increased stance time on the left lower extremity.  Examination revealed weakness of

the L5 and S1 dermatomes and generalized weakness of the bilateral lower extremities.  She had

tenderness with palpation over the entire lumbar spine and straight leg raising was positive on the

right beyond 30 degrees.  The therapist noted that Plaintiff's subjective information and the

objective findings were consistent with the stated diagnosis of chronic low back pain and

recommended therapy three times per week, for four weeks.  AR 191-192.

On August 5, 2005, Plaintiff returned to Dr. Schuller and complained of fluctuating back

pain.  Plaintiff was released to modified work, with lifting no more than 10 pounds, no driving,

no climbing, and no working over four hours a day.  AR 252.

On August 23, 2005, Plaintiff saw neurosurgeon David Bybee, M.D., for a workers'

compensation examination.  She complained of low back pain radiating into the right leg and

numbness in the right leg.  Plaintiff reported that she was injured at work on March 13, 2004,

when she was climbing and pulling equipment.  On examination, she was in no acute distress and

walked without a gait disturbance.  Straight leg raising was negative bilaterally, lumbar flexion

was to 90 degrees and extension was to 15 degrees with pain.  Plaintiff had diminished pin

sensation in the right medial thigh and foreleg and right anterior thigh.  Right knee reflex was

absent.  Dr. Bybee reviewed Plaintiff's February 2005 x-ray and diagnosed right lumbar

radiculopathy secondary to possible herniation at L3-4.  AR 201.

On September 12, 2005, Dr. Schuller noted that Dr. Bybee recommended "no work."

Plaintiff also complained of an increase in pain and right leg weakness.  AR 251.

On October 4, 2005, a lumbar myelogram showed small-to-moderate central disc

protrusion at L3-4, L4-5 and L5-S1 that caused minimal narrowing of the central canal.  AR 193-

194.

A CT scan performed the same day showed a small annular disc bulge at L3-4 and L4-5

that results in minimal narrowing of the central canal.  At L5-S1, there is a small central disc

protrusion that causes minimal narrowing of the central canal.  AR 194-195.

1    Plaintiff saw Dr. Schuller on October 10, 2005, and reported headaches and an increase in
2   back pain since the myelogram.  AR 249.

3    On October 27, 2005, Plaintiff returned to Dr. Bybee.  She complained of low back pain
4   radiating down the right leg.  Plaintiff reported that her symptoms had somewhat improved since
5   being off work, but worsen with activities such as shopping.  Her examination was unchanged.
6   Dr. Bybee reviewed the recent diagnostic studies and noted that the myelogram did not show
7   impingement at any level.  He diagnosed lumbar facet syndrome, sacroilitis and painful disc
8   syndrome.  Dr. Bybee recommended referral to pain management for evaluation and treatment of
9   low back and right leg pain.  Surgical intervention was not warranted.  AR 199-200.

10    Plaintiff saw Dr. Schuller on November 11, 2005, and complained of burning right leg
11   pain.  She continued to have recurrent exacerbation of radicular pain and she was struggling to
12   work four hours a day.  She had been off work since July 6.  AR 248.

13    On December 13, 2005, Plaintiff told Dr. Schuller that Lyrica and physical
14   therapy/massage helped.  She did not want an epidural.  Plaintiff had lost seven pounds and Dr.
15   Schuller discussed weight loss.  AR 247.

16    Plaintiff returned to Dr. Schuller on January 13, 2006, and reported that she was barely
17   able to perform four hours of work due to pain.  Dr. Schuller indicated that Plaintiff could return
18   to modified work, with lifting up to 10 pounds, sitting for up to 15-30 minutes per hour, standing
19   for up to 15-30 minutes per hour and ambulating for up to 5-15 minutes per hour.  She could not
20   bend or squat and was limited to a four hour work day.  AR 246.

21    An office note from Dr. Schuller dated February 26, 2006, states that Plaintiff was
22   dismissed from her position as a landfill scale attendant.  She also reported that Lyrica caused
23   dizziness.  AR 242.

24    On March 9, 2006, Plaintiff reported to Dr. Schuller that Kadian was making her
25   nauseous and was too sedating.  Mobic was helping, however.  AR 240.

26    Dr. Schuller wrote a letter to a Merced County Human Resources Analyst on March 22,
27   2006.  He was responding to a request to review three potential positions and evaluate whether
28   Plaintiff could perform the positions.  He states that Plaintiff's analgesic needs have not yet been

met even though he has prescribed numerous medications in an effort to release her back to work.  Many of the medications have caused adverse reactions such as increased sedation, nausea and dizziness.  Dr. Schuller's goal was to achieve good pain control and then evaluate her ability to return to work in either a regular or modified capacity.  AR 238-239.

Plaintiff saw Dr. Schuller on April 14, 2006, and reported that her symptoms were unchanged with bilateral leg pain.  Dr. Schuller noted right leg weakness.  AR 237.

On May 15, 2006, Plaintiff told Dr. Schuller that her pain had improved over the past few days but that her pain increased after more than 15 minutes of activity.  Plaintiff did not want epidural injections.  AR 236.

On June 12, 2006, Plaintiff saw Dr. Schuller and reported that she has had increased pain and severe spasms since she ran out of Mobic.  AR 235.

Lumbar x-rays taken on July 11, 2006, revealed severe multilevel degenerative disc disease and facet arthropathy only at L5-S1.  AR 203.

On July 16, 2006, Plaintiff saw Juliane Tran, M.D., for a consultive examination.  Plaintiff reported that she has had back pain for about two and one-half years from a work injury.  She denied having any falls or accidents.  Plaintiff described back pain that sometimes radiated into the right leg and caused numbness, and worsened with prolonged sitting, walking, bending and standing.  Plaintiff had two epidural injections about two years ago, but had to discontinue the injections because of raised blood pressure.  Plaintiff has had physical therapy, which provided some partial relief of the pressure but did not take away the pain.  Plaintiff told Dr. Tran that she could cook, but that it was "quite painful" and she needed help.  She could wash dishes but did not do any house chores.  AR 204.

On examination, Plaintiff was mildly obese with fair mobility.  During the examination, Plaintiff displayed "painful behavior with occasional moaning out loud, especially for strength testing and range of motion examination."  Effort seemed decreased and she was fairly slow in taking off her shoes and socks.  Plaintiff was careful not to bend over.  It was difficult to find the exact site of tenderness, as Plaintiff "generally moans out loud with examination and even with light palpation."  There seemed to be more pain with palpation at the right SI joint.  Plaintiff

moaned out loud and showed severe distress during range of motion testing in the hips.  Straight leg raising was negative on the left and produced back pain without radicular symptoms on the right.  Motor strength was five out of five throughout.  Sensation was decreased in the right lower extremities, in the right thigh, leg and foot diffusely, but not in a nerve or dermatome patten.  AR 205-206.

Dr. Tran diagnosed back pain, probably from lumbar disc disease and lumbosacral sprain/strain.  There may be involvement of the right SI joint.  There was no objective evidence of lumbar radiculopathy, though subjective symptoms were radicular.  Plaintiff had normal strength with mildly decreased range of motion.  Her sensory examination was non-specific for a dermatome.  He believed that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and had no further restrictions.  AR 206.

On October 10, 2006, Plaintiff told Dr. Schuller that Soma worked "ok" and that she had no more numbness.  She reported that Baclofen made her feel bad.  Plaintiff had increased right foot pain with activity and had been nervous lately.  Dr. Schuller prescribed Soma and Mobic.  AR 234.

Plaintiff saw Dr. Schuller on January 9, 2007.  He noted that her symptoms were unchanged, though she had occasional flare-ups.  She was instructed to continue her current medications.  AR 233.

On February 28, 2007, Dr. Schuller completed a Physical Capacities Evaluation.  He diagnosed sacroilitis, lumbar facet syndrome and painful disc syndrome and listed her prognosis as "chronic."  During an eight hour day, Plaintiff could sit for one hour, stand for 20 minutes and walk for 20 minutes.  She could rarely lift zero to 20 pounds and could never lift 50 pounds.  She could use her hands, fingers and arms for less than 5 percent of the work day.  Plaintiff's symptoms included impaired sleep, sensory loss, depression, anxiety, difficulty thinking/concentrating, emotional withdrawal/isolation and loss of vision.  AR 212.

On March 9, 2007, Dr. Schuller completed a Physical Residual Capacity Questionnaire.  He noted that he first treated Plaintiff on March 26, 2004, and last saw her on February 28, 2007.  He diagnosed sacroilitis, lumbar facet syndrome and painful disc syndrome.  Plaintiff's primary

symptoms were depression, anxiety and constant pain in her neck, back, hand, arm, leg and foot. He listed his objective findings as limited range of motion in her hips, tenderness, muscle spasms in the left scapular adductors, abnormal gait, decreased sensation in the right leg and thigh and decreased reflexes. He rated her pain as a seven out of ten and her fatigue as an eight out of ten. Dr. Schuller thought Plaintiff could sit for less than one hour in an eight hour day and could stand/walk for less than one hour. She could not sit continuously. Plaintiff could occasionally lift and carry up to 10 pounds and would have significant limitations in repetitive reaching, handling, fingering and lifting. Plaintiff would also have psychological limitations but could tolerate low stress. She could not perform a full-time competitive job, as she has pain 24 hours a day and associated depression and anxiety. Plaintiff would likely be absent more than three times per month. Dr. Schuller believed that Plaintiff has been this limited since March 23, 2004. AR 207-210.

On June 20, 2007, State Agency physician R. B. Paxton, M.D., completed a Psychiatric Review Technique form. Dr. Paxton opined that Plaintiff's mental impairment was not severe. AR 255. In rating Plaintiff's limitations, Dr. Paxton opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration. AR 263

On May 24, 2007, State Agency physician G. W. Bugg, M.D., completed a Physical Residual Functional Capacity Assessment. Plaintiff could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk about six hours and sit for about six hours. She could occasionally climb ramps, stairs, ladders, ropes and scaffolds. Plaintiff could frequently balance, stoop and kneel and could occasionally crouch and crawl. AR 213-217. This opinion was affirmed on November 1, 2007. AR 267.

Plaintiff returned to Dr. Schuller on October 10, 2007, and complained of right thigh pain and numbness and low back pain with radiation into the right lower extremity. On examination, deep tendon reflexes were absent and power was five out of five. AR 272.

On January 5, 2008, Plaintiff saw Dr. Schuller and complained of bilateral foot pain, greater in the right than left. She had sharp foot pain and radiation up her leg with weight

bearing.  She also complained of arm pain and hand parathesias, as well as joint pains.  Her back

pain had increased during the winter, but medication was helping to relieve the back spasms.  On

examination, she had 11 out of 18 fibromyalgia trigger points.  He diagnosed lumbar

radiculopathy, sacroilitis, lumbar facet syndrome, painful disc syndrome and fibromyalgia.  AR

274.

On March 21, 2008, Plaintiff reported that her neck and bilateral shoulder pain had

decreased.  AR 275.

Plaintiff returned to Dr. Schuller on April 23, 2008, and complained of depression, right

triceps knots and right hand parathesia.  On examination, Plaintiff had decreased power in the

right hand secondary to thumb pain and mild atrophy of the right intrinsic second digit.  Dr.

Schuller adjusted her medications.  AR 276.

On June 16, 2008, Dr. Schuller completed a Medical Source Statement and indicated that

Plaintiff could occasionally and frequently lift less than 10 pounds, stand and/or walk for less

than two hours in an eight hour day, and sit for less than six hours, with periodic alternation of

position.  Plaintiff was limited in pushing and pulling with the upper extremities.  She could

occasionally climb and balance but could never kneel, crouch, crawl or stoop.  Plaintiff could

occasionally reach in all directions and frequently handle.  Plaintiff was limited in her exposure

to dust, humidity/wetness and hazards.  AR 279-282.

On June 26, 2008, Plaintiff saw Richard H. Robinson, M.D., for symptoms of biliary

colic.  She also reported that she suffered an injury to her back several years ago when she fell

and developed significant swelling.  She described her back pain as constant.  Plaintiff was in no

acute distress on examination.  Abdominal examination revealed chronic cholecystitus with

cholelithiasis and biliary colic.  He recommended laparoscopic surgery, which Plaintiff

underwent on July 14, 2008.  AR 288, 293-295.

Subsequent treatment records from Dr. Schuller noted that Plaintiff was not taking Mobic

following her surgery.  Her pain had increased and everything hurt.  Dr. Schuller recommended

Tylenol, frequent positional changes and exercise.  AR 320.

1    Plaintiff also continued to complain of right lower extremity numbness and pain,

2    intermittent sharp back pain with radiation, right elbow pain, left hand pain, right foot pain and

3    bilateral hip pain.  Examination showed positive straight leg raising bilaterally and painful hip

4    rotation.  AR 321-323.

5    On July 15, 2009, Dr. Schuller completed a Physical Residual Functional Capacity

6    Assessment Questionnaire.  In addition to previous diagnoses, Dr. Schuller also diagnosed

7    fibromyalgia.  He believed that Plaintiff's condition would progressively worsen.  As objective

8    symptoms, Dr. Schuller listed negative Tinel's sign, negative wrist flexion compression test, grip

9    strength at four out of five on the right hand and five out of five on the left hand.  He noted that

10   almost all medications caused side effects.  He did not believe that Plaintiff was a malingerer and

11   did not think that emotional factors contributed to her limitations.  He then noted, however, that

12   depression affects her physical condition.  Plaintiff also suffered from headaches three to four

13   times per week and has frequent neck pain.  AR 332-333, 336.

14   He opined that Plaintiff's pain would frequently interfere with attention and concentration

15   and thought that she had a slight limitation in handling work stress.   Plaintiff could walk for two

16   city blocks without rest, sit for 20 minutes continuously and stand for 15 minutes continuously.

17   She could stand/walk for less than two hours total and sit for less than two hours total.  However,

18   she needed to walk every 20 minutes for 15 minutes at a time.  She also needed to change

19   positions and take frequent unscheduled breaks of 20 to 30 minutes.  Plaintiff had to elevate her

20   legs to waist height for 40 percent of the workday.   She could occasionally lift and carry up to 10

21   pounds.  Plaintiff could never use her right hand, could use her right fingers five percent of the

22   time and could use her right arm 10 percent of the time.  Plaintiff could never bend or twist at the

23   waist.  Dr. Schuller believed that Plaintiff would be absent from work more than three times per

24   month.  He noted that these limitations have been in place since January 2007.  AR 332-336.

25   ALJ's Findings

26   The ALJ determined that Plaintiff had the severe impairments of lumbar radiculopathy,

27   multilevel degenerative disc disease and facet arthropathy, and right radiculopathy.  AR 18.

28   Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to lift

and/or carry 20 pounds occasionally, 10 pounds frequently, sit, stand and/or walk for six hours in an eight hour day, occasionally climb, crouch, crawl and frequently stoop and kneel.  AR 18. Plaintiff could not perform her past relevant work, but could perform jobs that exist in significant numbers in the national economy.  AR 19-20.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

2   Cir. 1990).

3       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

4   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

5   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

6   that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her

7   disability; (2) has an impairment or a combination of impairments that is considered "severe"

8   (lumbar radiculopathy, multilevel degenerative disc disease and facet arthropathy, and right

9   radiculopathy) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does

10  not have an impairment or combination of impairments which meets or equals one of the

11  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past

12  relevant work; but (5) retains the RFC to perform a significant number of jobs in the national

13  economy.  AR 18-20.

14      Here, Plaintiff argues that the ALJ (1) failed to properly assess the medical opinions; and

15  (2) failed to properly assess her testimony.

16                                    **DISCUSSION**

17  A.     Analysis of the Medical Opinions

18      Plaintiff argues that the ALJ erred in adopting the opinion of the State Agency physician

19  over the opinion of Dr. Schuller, her treating source.

20      Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

21  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

22  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

23  physicians).  As a general rule, more weight should be given to the opinion of a treating source

24  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

25  647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

26  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

27  1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another

28  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

1   reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722
2   F.2d 499, 502 (9th Cir.1983).

3       The opinion of an examining physician is, in turn, entitled to greater weight than the
4   opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);
5   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating
6   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the
7   uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion
8   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,
9   can only be rejected for specific and legitimate reasons that are supported by substantial evidence
10  in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

11      The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence
12  that justifies the rejection of the opinion of either an examining physician or a treating physician.
13  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can
14  reject the opinion of a treating or examining physician, based in part on the testimony of a
15  nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th
16  Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For
17  example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating
18  physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the
19  opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in
20  original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ
21  also relied on laboratory test results, on contrary reports from examining physicians, and on
22  testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

23      Here, the ALJ was presented with opinions from three sources. Dr. Schuller repeatedly
24  found Plaintiff capable of less than sedentary work. Dr. Tran, who examined Plaintiff, found that
25  she would be limited to lifting 50 pounds occasionally, 25 pounds frequently, with no further
26  limitations. State Agency physician Dr. Bugg determined that Plaintiff could lift 20 pounds
27  occasionally, 10 pounds frequently, stand and/or walk for six hours, sit for six hours,
28  occasionally climb, crouch and crawl and frequently balance, stoop and kneel.

1      The ALJ adopted Dr. Bugg's assessment in full in determining Plaintiff's RFC, finding it

2 to be "more consistent with the overall record, including the CT and MRI studies."  AR 19.  He

3 therefore rejected the treating and consulting physicians' opinions in favor of the non-examining

4 State Agency physician.

5      As noted above, the opinion of a non-examining physician may be accepted as substantial

6 evidence if it is supported by other evidence in the record and is consistent with it.  *Lester v.*

7 *Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995).  In other words, there must be substantial

8 evidence, other than the non-examining physician's opinion, to support the rejection of contrary

9 conclusions by the treating and/or examining source.  *Andrews v. Shalala*, 53 F.3d 1035, 1043

10 (9th Cir. 1995).

11      In adopting Dr. Bugg's opinion, the ALJ reviewed the medical record and found it to be

12 most consistent with Dr. Bugg's findings. AR 19.  For example, the ALJ explained that

13 "although the claimant does have some positive degenerative disc disease findings on a CT

14 myelogram and MRI, the MRI also noted no disc herniation or significant disc protrusions."  AR

15 18, 193-195, 197.  The ALJ cited the "overall record," which also included treatment from

16 neurosurgeon Dr. Bybee.  When Dr. Bybee examined her in August and October of 2005,

17 Plaintiff was in no acute distress and walked without a gait disturbance.  Dr. Bybee reviewed the

18 diagnostic studies and noted that the myelogram did not show impingement at any level.  He

19 recommended referral to pain management for evaluation and treatment of low back and right leg

20 pain and indicated that surgical intervention was not warranted.  AR 199-201.

21      In addition to citing objective evidence, the ALJ also set forth specific and legitimate

22 reasons for rejecting Dr. Schuller's opinions.  The ALJ acknowledged that Dr. Schuller

23 completed numerous forms indicating that Plaintiff could not even perform sedentary work, but

24 first explained that his opinions seem to rely "quite a bit" on Plaintiff's subjective complaints.

25 AR 18. *Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597,

26 605 (9th 1989).

27      Indeed, the majority of Dr. Schuller's treatment notes, which are all written on Workers'

28 Compensation Progress Report forms, set forth no objective examination findings other than

Plaintiff's weight, temperature, blood pressure and pulse.  AR 233, 234, 235, 236, 240, 241, 242, 246, 247, 248, 249, 251, 252, 253, 275, 278, 305, 320, 322.  In contrast, almost every note contains a detailed description of Plaintiff's subjective reports.  Even the findings that he did note were either normal or relatively minor compared to his belief that Plaintiff couldn't even perform sedentary work.  For example, he found decreased power (3+ to 4+) in Plaintiff's lower extremities on one occasion, absent or decreased deep tendon reflexes on several occasions, decreased power in the right hand twice and mild atrophy in the right hand once.  AR 209, 237, 254, 272, 276, 321, 323, 332.  He also noted decreased range of motion in her hips, tenderness, muscle spasms, decreased sensation and abnormal gait, though other than painful hip rotation, these findings were only mentioned once in February 2007.  AR 209, 323.  Other times, he found that straight leg raising was negative and that Plaintiff's power was normal (5 out of 5).  AR 254, 272.

Plaintiff argues that Dr. Schuller's opinions are consistent with the record, though she cites mainly her own subjective complaints.  The ALJ was entitled to review the medical evidence and resolve the conflicts therein.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Plaintiff's own interpretation of the evidence does not render the ALJ's interpretation improper or unsupported.

Plaintiff also argues that Dr. Schuller's findings were consistent with Dr. Tran's findings, and his opinion therefore should have been given more weight.  *Orn v. Astrue*, 495 F.3d 625, 632-633 (9th Cir. 2007).  While it is true that when an examining physician relies on the same clinical findings as a treating physician but differs only in his conclusions, the conclusions of the treating source are entitled to more weight, the principle does not apply where the treating source's opinions are not necessarily supported in the first instance.  Moreover, although some findings were duplicated, Dr. Tran also found decreased effort and constant painful behavior.  He also conducted numerous tests that Dr. Schuller did not.  Also, contrary to Dr. Schuller, Dr. Tran found that although Plaintiff complained of radicular pain, there were no objective radicular symptoms.  AR 206.

1    Similarly, the ALJ questioned Dr. Schuller's opinions because they were set forth on

2    check-block forms. AR 19. "An ALJ may discredit treating physicians' opinions that are

3    conclusory, brief, and unsupported by the record as a whole, id., or by objective medical

4    findings." *Batson v. Comm'r Soc. Secy. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The three

5    forms cited by Plaintiff are indeed check-the-box forms and contain little reference to medical

6    findings. Many of the objective symptoms that he does cite were not repeated in his treatment

7    notes. Dr. Schuller never references Plaintiff's MRI or other diagnostic tests. Finally, as

8    discussed above, the medical treatment notes that he purports to rely on contain very little

9    objective findings.

10    Plaintiff also suggests that the ALJ rejected Dr. Schuller's opinion because he was not a

11    mental health specialist. The ALJ notes that Dr. Schuller also found psychological limitations,

12    but explained that such findings seem "somewhat out of his field of expertise." AR 19. The ALJ

13    then adopts the State Agency physician's finding that Plaintiff did not have a severe mental

14    impairment. AR 19. Contrary to Plaintiff's argument, however, the ALJ did not rely solely on

15    the lack of Dr. Schuller's expertise in finding that Plaintiff's mental impairment was not severe.

16    The ALJ also noted the complete lack of mental health treatment in the record. AR 19. In fact,

17    although Dr. Schuller noted depression on his questionnaires, there is no evidence of any mental

18    health testing and Plaintiff only complained of depression once throughout her years of

19    treatment. AR 276. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a lack of

20    supporting clinical findings is also a valid reason for rejecting a treating physician's opinion).

21    Based on the above, the Court finds that the ALJ's treatment of the medical opinions was

22    supported by substantial evidence and free of legal error.

23  B.    Plaintiff's Subjective Complaints

24    Plaintiff next argues that the ALJ improperly dismissed her subjective complaints of pain.

25    In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

26    pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

27    subjective complaints:

28

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan, 169 F.3d at 599* (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair, 885 F.2d at 603*; *see also Thomas, 278 F.3d at 958-59*.

The ALJ begins his credibility analysis by explaining that Plaintiff had a "marginal work history."  AR 19.  In the past 15 years, Plaintiff had only eight full substantial gainful activity years.  She has had only nine years of substantial gainful activity in her life.  AR 19.  A claimant's poor work history may be used to question credibility.  *Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)*.

Plaintiff contends that she did not work prior to 1998 because she cared for her children until her youngest was 7 years old.  At the time of the hearing, Plaintiff was 53 years old and her children were 17 and 20.  Even assuming that Plaintiff took time off to care for her children, there is still a substantial gap in her employment.  Plaintiff's first child was born when she was approximately 33 years old, leaving her with more than a decade prior to that time with no substantial gainful activity.

Plaintiff also argues that Dr. Schuller's early notes indicate that she was trying to return to work, but despite her best efforts, she could not do so.  Dr. Schuller cleared Plaintiff for modified work in July and August 2005.  AR 252, 253.  During her hearing, however, testified that she last worked on or about June 26, 2005, and that she had not looked for work since that time.  AR 30. Therefore, Plaintiff admitted that although she was cleared for work after her last day, she did not look for work.

1    The ALJ next explained that Plaintiff's activities of daily living diminished her

2    credibility.  AR 19.  He found that Plaintiff did "a fair range of activities of daily living,

3    including caring for her own personal hygiene, cooking, shopping, yard work, house cleaning,

4    ironing, taking care of pets,[2] visiting friends outside of her home daily, crocheting and reading."

5    AR 19.  An ALJ may take a claimant's daily activities into consideration in determining

6    credibility.  SSR 96-7p.  Plaintiff contends, however, that her activities do not indicate that she

7    can perform work at the sedentary or light level.  She cites various notations in the record that

8    she asserts show that although she can perform certain tasks, she either does so with difficulty or

9    for a limited amount of time.

10   During the hearing, Plaintiff testified that she can care for her personal needs, prepare

11   simple meals once a day, do dishes once a day, cook twice a week and go grocery shopping once

12   a week.  AR 31.  She dusts once a week and does laundry every day.  AR 32-33.  Plaintiff cleans

13   her kitchen every other day, talks on the phone every day and visits people outside of her house

14   every day.  AR 35.  Plaintiff likes to crochet and knit and does it for about an hour, once a week.

15   AR 36.  She watches television for about two hours a day and reads about 20 minutes, twice a

16   week.  AR 36.

17   Again, the ALJ is responsible for resolving the conflicts and the Court must uphold the

18   conclusion where the evidence is susceptible to more than one interpretation.  Here, although

19   Plaintiff cites evidence where she says she has trouble with some tasks and can only perform

20   other tasks for a limited about of time, her testimony during the hearing demonstrated that she is

21   actually quite functional despite her complaints of severe pain.  *See eg*., *Valentine v. Comm'r*

22   *Soc. Secy.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence did not

23   suggest Valentine could return to his old job at Cummins, but she thought it did suggest that

24   Valentine's later claims about the severity of his limitations were exaggerated.")

25   The ALJ next explains that Plaintiff "seemed to change her testimony."  AR 19.  As an

26   example, the ALJ set out Plaintiff's testimony regarding her compliance with medical treatments.

27
     _____

28        [2] In her disability report completed April 2007, Plaintiff stated that she will feed her pets if her son forgets.
     AR 156-163.

"Plaintiff first testified that she was fully compliant with her treatment recommendations, but later indicated that she was only 70% compliant with her weight loss diet." AR 19. During the hearing, Plaintiff initially stated that she follows all her treatment recommendations. She then acknowledged that doctors have told her to lose weight and that she was about 70 percent compliant with her weight loss diet. AR 38-39. The ALJ may use "ordinary techniques" in addressing credibility, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

Plaintiff characterizes this analysis as the type of finding made improper by *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). In *Orn*, however, the ALJ found that Plaintiff's failure to lose weight suggested that he was not as disabled as alleged. Here, however, the ALJ is not focusing on Plaintiff's failure to lose weight- he focuses on Plaintiff's inconsistent testimony.

Similarly, the ALJ noted that although Plaintiff testified she could not concentrate for more than 30 minutes, she paid attention and responded appropriately throughout the hearing. AR 19. Although the ALJ may not rely on his observations alone to discredit testimony, the observations may be part of the analysis. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992). Plaintiff suggests that this is not a valid reason because the hearing was only 42 minutes and she did not testify the whole time. The ALJ was able to observe Plaintiff's overall attention throughout the hearing, however, and he was entitled to contrast this with her testimony that she could not concentrate for more than 30 minutes.

The ALJ's credibility analysis was supported by substantial evidence and free of legal error.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court

21

1  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

2  Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael

3  J. Astrue, Commissioner of Social Security and against Plaintiff, Jeannie L. Mann.

4

5      IT IS SO ORDERED.

6      **Dated:**   **March 18, 2011**                    **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28